UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | Case No. 08-17152 EEB |
| KINGSLEY CAPITAL, INC. ) | Chapter 11 |
| ) | |
| Debtor ) | |
| ) | |

**DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF
SECOND AMENDED JOINT PLAN OF REORGANIZATION**

The Debtor, Kingsley Capital, Inc., through its attorneys Onsager, Staelin & Guyerson, LLC, submits Debtors' Memorandum of Law In Support of Confirmation of Second Amended Joint Plan of Reorganization as follows:

**PLAN SOLICITATION AND BALLOTING RESULTS**

2. On May 18, 2007, Debtor filed its Second Amended Plan of Reorganization, as subsequently modified, the "Plan") and the accompanying Third Amended Disclosure Statement. Pursuant to this Court's order of June 5, 2009, the Plan and Disclosure Statement, with ballots, were sent out to the creditors and interest holders on June 26, 2009.

3. On August 7, 2009, Debtor filed a Summary of Ballots (the "Ballot Report") setting forth the Plan voting results for all voting classes (the "Impaired Voting Classes"), as follows:

      a.      Class 1 (San Diego Claim) – Unimpaired

      b.      Class 2 (Fidelity Claim) – Unimpaired

      c.      Class 3 (National Legal Claim) – Rejected.

      d.      Class 4 (John Grace Claim) – Accepted.

      e.      Class 5 (Burg Simpson Claim) – Rejected.

      f.      Class 6 (Priority Unsecured Claims) – Accepted.

      g.      Class 7 (General Unsecured Claims) – Accepted.

      h.      Class 8 (Insider Unsecured) - Accepted.

      i.      Class 9 (New Horizons Claim) – Accepted

      j.      Class 10 (Interest Holders) – Unimpaired.

## ARGUMENT

I.   THE PLAN SHOULD BE CONFIRMED

4.   To confirm the Plan, the Court must find that Debtor has satisfied the provisions of §1129 of the Bankruptcy Code by a preponderance of the evidence. *e.g., Heartland Fed. Savings & Loan Ass'n v. Briscoe Enters., Ltd. III (In re Briscoe Enters., Ltd. II)*, 994 F.2d 1160, 1165 (5th Cir. 1993) ("[t]he combination of legislative silence, Supreme Court holdings, and the structure of the [Bankruptcy] Code leads this Court to conclude that preponderance of the evidence is the debtor's appropriate standard of proof both under 11 U.S.C. §1129(a) and in a cramdown."). The Plan complies with all relevant sections of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and applicable nonbankruptcy law. In particular, the Plan fully complies with all of the requirements of §§ 1122, 1123 and 1129 of the Bankruptcy Code. This Memorandum addresses each requirement individually.

   A.   The Plan Complies With §1129(a)(1)

5.   Section 1129(a)(1) of the Bankruptcy Code requires that the Plan comply with the applicable provisions of chapter 11 of the Bankruptcy Code. The legislative history of §1129(a)(1) indicates that a principal objective of this provision is to assure compliance with the sections of the Bankruptcy Code governing classification of claims and interests and the contents of a plan of reorganization. *See* S. Rep. No. 989, 95th Cong., 2d Sess. 126 (1978); H.R. Rep. No. 595, 95th Cong., lst Sess. 412 (1977); *In re S&W Enter.*, 37 B.R. 153, 158 (Bankr. N.D. Ill. 1984) ("An examination of the legislative history of [Section 1129(a)(1)] reveals that although its scope is certainly broad, the provisions it was more directly aimed at were Sections 1122 and 1123").

   *The Plan Satisfies 11 U.S.C. § 1122's Classification Requirements.*

6.   The Plan satisfies §1122's classification requirements. Section 1122 provides:

> (a) Except as provided in subsection (b) of this section, a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

7.   Under §1122, "a debtor in bankruptcy has considerable discretion to classify claims and interests in a chapter 11 reorganization plan." *In re Wabash Valley Power Assoc., Inc.*, 72 F.3d 1305, 1321 (7th Cir. 1996) (citing *In re Woodbrook Assocs.*, 19 F.3d 312 (7th Cir. 1994)). Under Kingsley's Plan, all secured creditors are separately classified, and all unsecured claims are in one class (Class 7). The claim of Burg Simpson is separately classified as Class 5, but is treated as if it were a Class 7 claim because the creditor claims to be unsecured.

8.   In the Plan, creditors that have claimed they have, or may have, ownership interest, secured claims or other interests and rights in specifically identified property have been separately classified. These are Classes 1 though 5 and Class 9. Therefore, valid

2

business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and it satisfies § 1122 of the Bankruptcy Code.

### *The Plan Satisfies the Seven Mandatory Plan Requirements of 11 U.S.C. § 1123(a)(1)-(a)(7)*

9. The Plan meets § 1123(a)'s seven mandatory requirements. Specifically, § 1123(a)(1)-(7) require that a plan:

(a) designate classes of claims and interests;

(b) specify unimpaired classes of claims and interests;

(c) specify treatment of impaired classes of claims and interests;

(d) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim agrees to a less favorable treatment of such particular claim or interest;

(e) provide adequate means for the plan's implementation;

(f) provide for the prohibition of nonvoting equity securities and provide an appropriate distribution of voting power among the classes of securities; and

(g) contain only provisions that are consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of the reorganized company's officers and directors.

10. Articles 2, 3 and 4 of the Plan satisfy the first three requirements of §1123(a) by: (a) designating classes of Claims and Interests, as required by §1123(a)(1); (b) specifying the Classes of Claims and Interests that are not impaired under the Plan, as required by §1123(a)(2); and (c) specifying the treatment of each Class of Claims and Interests that is impaired, as required by §1123(a)(3).

11. The Plan also satisfies §1123(a)(4) because the treatment of each Claim or Interest within a Class is the same as the treatment of each other Claim or Interest in that Class, unless the holder of a Claim or Interest agrees to less favorable treatment on account of its Claim or Interest.

12. Section 1123(a)(5) specifies that a non-exclusive description of what a plan may contain to provide adequate means for implementation. Articles 5, 6 and 9 and various other provisions of the Plan provide adequate means for the Plan's implementation, thus satisfying §1123(a)(5). Among other things, the Plan provides that 100% of all distributions from Good Earth Minerals, LLC will go to the Debtor for distribution under the Plan until all Class 7 Claims are paid in full, before any other member may receive a distribution. The Debtor will present the agreement of the members of Good Earth Minerals, LLC to this effect at confirmation.

13. The requirement of §1123(a)(6) concerning the prohibition against issuance of nonvoting equity securities is not applicable to the Plan.

14. Finally, the Plan fulfills §1123(a)(7) by leaving the selection of the Debtor's officers and directors to Colorado corporate law, which is consistent with the interests of creditors, equity security holders and public policy.

### B. Discretionary Contents of the Plan

15. Section 1123(b) of the Bankruptcy Code identifies various discretionary provisions that may be included in a plan of reorganization, but are not required. For example, a plan may impair or leave unimpaired any class of claims or interests and provide for the assumption or rejection of executory contracts and unexpired leases. A plan also may provide for (a) "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate," or (b) "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest." Finally, a plan may "leave unaffected the rights of holders of any class of claims" and may "include any other appropriate provision not inconsistent with the applicable provisions of [Title 11]."

16. Here, the Plan contains various provisions in line with §1123(b). For example, Article 3 of the Plan provides for the impairment of certain Classes, while leaving Classes 1, 2, and 10 unimpaired. Article 6 deals with executory contracts. All discretionary provisions of the Plan are permissible and in the interests of creditors and interest holders

### C. Debtors Have Complied with the Applicable Provisions of the Bankruptcy Code (§1129(a)(2))

17. The Debtor has satisfied § 1129(a)(2), which essentially requires that the Debtor comply with the solicitation provisions of the Bankruptcy Code. *See, e.g., Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.,)* 150 F.3d 503, 512 n.3 (5th Cir. 1998), *cert. denied*, 526 U.S. 1144 (1999) ("…a plan may not be confirmed unless the plan complies with…§ 1129(a)(2), which provides that a plan may not be confirmed unless the proponent of the plan complies with the applicable provisions of Title 11") (citations omitted); S. Rep. No. 989, 95th Congr., 2d Sess. 126; H.R. Rep. No. 595, 95th Cong., 1st Sess. 412. The Debtor distributed its Disclosure Statement and solicited acceptances of the Plan as authorized under this Court's Order regarding the same. No party has suggested that the Debtor did not fulfill its solicitation obligations in connection with the Plan or the Bankruptcy Code.

### D. The Plan Has Been Proposed in Good Faith and Not By Any Means Forbidden by Law (§1129(a)(3))

18. Section 1129(a)(3) requires that the Plan be "proposed in good faith and not by any means forbidden by law." In the context of §1129(a)(3), "good faith" is not a free-floating conception of ethics or morality but rather "is generally interpreted to mean

4

that there exists a 'reasonable likelihood' that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.'" *In re Madison Hotel Assocs.*, 749 F.2d 410, 424-25 (7th Cir. 1984); *see Official Comm. Of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200 F.3d 154, 165 (3d Cir. 1999) (finding good faith requires "some relation" between the Chapter 11 plan and the "reorganization-related purposes" of Chapter 11); *see also In re Zenith Elecs. Corp.*, 241 B.R. 92, 107 (Bankr. D. Del. 1999) (holding good faith requires that the plan be proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code); *In re New Valley Corp.*, 168 B.R. 73, 80 (Bankr. D. N.J. 1994) ("It is generally held that a plan is proposed in good faith if there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purpose of the Bankruptcy Code.").

19. To determine whether a plan seeks relief consistent with the Bankruptcy Code, courts look to the reorganization plan itself. *Madison Hotel Assocs.*, 749 F.2d at 425; *see also*, *In re Sound Radio, Inc.*, 93 B.R. 849, 854 (Bankr. D.N.J. 1988) (holding focus of good faith inquiry on plan itself rather than other factors), *aff'd in part and remanded in part on other grounds*, 103 B.R. 521 (D.N.J. 1989), *aff'd*, 908 F.2d 964 (3d Cir. 1990). Thus, where the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of § 1129(a)(3) is satisfied. *See In re Century Glove, Inc.*, 1993 WL 239489 at *4 (D. Del. Feb. 10, 1993); *see also Fin. Sec. Assurance, Inc. v. T-H New Orleans L.P. (In re T-H New Orleans L.P.)*, 116 F.3d 790, 802 (5th Cir. 1997) (same).

20. Here, the Debtor has proposed the Plan in good faith, with the legitimate and honest purposes of maximizing the value of the recovery to creditors and interest holders. In Sections 4.8 and 4.9, it subordinates the otherwise legitimate secured and unsecured claims of insiders, including the secured claim of New Horizons, to ensure that non-insider unsecured creditors are treated more favorable than would occur in a Chapter 7 liquidation (since in a Chapter 7, the $2.4 million claim of New Horizons would share pro rata with the other class 7 creditors, even if its liens were avoided.) Additionally, the Plan proposes to pay interest on all claims and provides other incentives to ensure that the Debtor is motivated to pay all non-insider claims as quickly as possible. The Plan thus will achieve a result consistent with the objectives and purposes of the Bankruptcy Code and is not proposed by any means forbidden by law.

20. Burg Simpson has objected to the Plan, claiming that the Debtor's mineral assets are worthless and that, therefore, the Plan will somehow cause the Debtor's cash to be used primarily for priority wage claims, chapter 11 counsel's fees, and Ms. Janice Jones salary. On the first two points, the Debtor notes that these priority claims are entitled to the same priority in a Chapter 7 case; the Plan does not alter attempt to change this fact. On the third point, the Debtor notes that any cash a trustee has will be used to perform most of the same tasks necessary to sell the mineral interests (or some portion of the Good Earth Minerals membership interests) that Ms. Jones will be taking care of. Burg Simpson makes no attempt to explain how the sale process might take place with no one to manage it. Burg Simpson ignores entirely the fact that a trustee is entitled to payment of his or her expenses in selling this out-of-state asset, such as travel, broker's fees and the like, as well a trustee's fee. Further, it ignores the expense to avoid New

Horizon's lien (much less the risk that such an attempt would fail), as well as the subordination of the large unsecured claim that would result if the trustee were successful.

### E. The Plan Provides For Bankruptcy Court Approval Of Certain Administrative Payments (§1129(a)(4))

21. Section 1129(a)(4) of the Bankruptcy Code requires that:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to approval of, the court as reasonable.

This section has been construed to require that all payments of professional fees that are made from estate assets be subject to review and approval by the Court as to their reasonableness. *In re Future Energy Corp.*, 83 B.R. 470 (Bankr. S.D. Ohio 1988); *U.S. Truck Co.,* 47 B.R. 932. This is provided in Section 2.3 of the Plan.

22. In accordance with the foregoing, Section 2.2 of the Plan provides for the payment of only Allowed Administrative Claims. See *In re Elsinore Shore Assocs.*, 91 B.R. 238, 268 (Bankr. D.N.J. 1988) (holding that requirements of §1129(a)(4) were satisfied where the plan provided for payment of only "allowed" administrative expenses). Other than Professional Fee Claims of Debtor's counsel, the Debtor is unaware of any Administrative Claims, and no applications under §503 have been filed or are expected.

### F. Post-Emergence Directors and Officers Have Been Disclosed and Their Appointment Is Consistent With Public Policy (§1129(a)(5))

23. Section 1129(a)(5)(A) requires that prior to Confirmation, the Debtor disclose the identity and affiliations of the proposed officers and directors of the reorganized debtor and that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy. In addition, § 1129(a)(5)(B) requires a plan proponent(s) to disclose the identity of an "insider" (as defined by 11 U.S.C. § 101(31)) to be employed or retained by the reorganized debtor and the "nature of any compensation for such insider." *See In re Apex Oil Co.*, 118 B.R. 683, 704-705 (Bankr. E.D. Mo. 1990) (finding Section 1129(a)(5)(B) satisfied where plan fully disclosed that certain insiders will be employed by reorganized debtor and the terms of employment of such insiders). The Disclosure Statement describes the retention of Dr. Janice Jones as the Debtor's CEO and her compensation (also referenced in Plan Section 5.2.6. The Directors of the Debtor are currently Alice Gluckman and William Willard, both of who will continue to serve as directors, as they have for at least six years. Other than out-of-pocket expenses, they will not be compensated. As disclosed in the Disclosure Statement (see p. 4 thereof), both are also 2% members of Good Earth Minerals, LLC. Neither has any other affiliation with the Debtor or any other party.

### G. The Plan Does Not Require Governmental Regulatory Approval (§1129(a)(6))

24. Section 1129(a)(6) of the Bankruptcy Code, which permits confirmation only if any regulatory commission with jurisdiction over the Debtor after confirmation has approved any rate change provided for in the Plan, is inapplicable in this case.

### H. The Plan is in the Best Interests of Creditors and Interest Holders (§1129(a)(7))

25. Section 1129(a)(7) of the Bankruptcy Code—the "best interests test"—requires that, with respect to each impaired class of claims or interests, each holder of a claim or interest of such class under the Plan on account of such claim or interest:

> (i) has accepted the plan; or
>
> (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.[1]

The best interests test applies to individual dissenting creditors rather than classes of claims and is generally satisfied through a liquidation/recovery analysis. *In re A.G. Consultants Grain Div., Inc.*, 77 B.R. 665 (Bankr. N.D. Ind. 1987); *In re Jartran, Inc.*, 44 B.R. 331, 389-93 (Bankr. N.D. Ill. 1984) (finding best interests test satisfied by showing that, upon liquidation the cash received would be insufficient to pay priority claims and secured creditors and that unsecured creditors and shareholders would receive nothing). As §1129(a)(7) makes clear, the best interests test applies only to non-accepting impaired claims or equity interests.

26. The Allowed Secured Claims in Classes 1, 2, 3, 4, and 5 remain unmodified and the holders are entitled to exercise whatever rights are accorded them by non-bankruptcy law in full satisfaction thereof. Any deficiency in Classes 1, 2, 3, and 5 would be a general unsecured claim in Class 7. Any deficiency in Classes 4 would be a Class 9 claim. No deficiency is expected in Classes 1 or 2, and Class 5 has been treated as a Class 7 creditor under the Plan.

27. All Allowed Unsecured Claims (Class 7) would receive 100% of their respective Allowed Claims – at least as much as would be received in a Chapter 7 liquidation. Therefore, arguably, the best interests test is a moot issue. If the Debtor is correct in its valuation of its mineral claims, the result under the Plan is the same as in a Chapter 7: payment in full with interest.

---

[1] 11 U.S.C. § 1129(a)(7)(A)(i)-(ii).

28. However, in the event the mineral claims were not to sell for enough to pay general unsecured claims under the Plan in full, the Plan ensures a better result than a Chapter 7 liquidation because the secured claim of New Horizons is in large part subordinated to non-insider unsecured claims. This accomplishes two important benefits not achievable in Chapter 7: in practical terms, the equivalent of avoiding the perfected security interest of New Horizons in its entirety at no cost to the estate; and the subordination of 80% of New Horizons' claim. Thus, even assuming *arguendo* that New Horizon's lien is actually avoidable (which would take time, money and effort to accomplish), New Horizons would still have a general unsecured claim much larger than the other Class 7 claims, and that large claim that would be entitled to share pro rata. The return to unsecured creditors would thus be diluted by about 80%. In addition, the Plan subordinates the separate general unsecured claims of the insiders, thus further enhancing the distribution to Class 7 creditors. As shown in Disclosure Statement Exhibit 3, the unsecured creditors will receive a better distribution at every turn under the Plan in the event the sales price of the mineral rights is less than enough to pay all claims in full. In the meantime, there is no harm or prejudice to any creditor.

29. Of course, if the lien of New Horizons were to survive an avoidance attack (which it well may), the result for creditors under the Plan is undeniably more favorable. Thus, the Plan satisfies the best interests test.

### I. Acceptance of Impaired Classes (§1129(a)(8))

30. Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept the Plan or be unimpaired under the Plan. Pursuant to §1126(c), a class of impaired claims accepts a plan if holders of at least two-thirds in dollar amount and more than one-half in number of the claims in that class actually vote to accept the plan. A class that is not impaired under a plan, and each holder of a claim or interest of such class, is conclusively presumed to have accepted the plan.

31. As evidenced in the Ballot Report, two impaired Voting Classes, Classes 3 and 5 voted to reject the Plan. However, the Class 3 creditor and the Debtor have agreed to a Plan modification that removes its objection and deems its Class 3 claim satisfied, leaving only the Class 5 creditor as an objector. Accordingly the Debtor is electing to invoke "cramdown" under § 1129(b).

### J. The Plan Complies With Statutorily Mandated Treatment Of Administrative And Priority Tax Claims (§1129(a)(9)).

32. Section 1129(a)(9) of the Bankruptcy Code requires that persons holding claims entitled to priority under §507(a) receive specified cash payments under a plan, unless the holder of a particular claim agrees to a different treatment with respect to such claim. Here, the class of unsecured priority claims (amounting to only $16,950) has accepted the Plan.

33. With regard to the secured tax claim of San Diego (Class 1), the Plan permits the creditor to exercise all of its remedies against the Ramona real estate by which the claim is secured. Given that the claim is for approximately $35,000 and the

8

lowest valuation given to the property by any party is approximately $1.0 million, San Diego is assured of payment. It has long been recognized that the surrender of the collateral to a creditor grants to that creditor the indubitable equivalent of its claim, or leaves it unimpaired. 7 *Collier on Bankruptcy* ¶ 1124.02[2], at 1124-7 (15th ed. Rev.2009).

34.  Article IV, Section B of the Plan provides for the treatment of Priority Tax Claims, but with the withdrawal by the IRS of its claim, no unsecured priority tax claims remain.

**K. At Least One Impaired Class of Claims Has Accepted the Plan, Excluding The Acceptances of Insiders (§1129(a)(10))**

35.  Section 1129(a)(10) of the Bankruptcy Code provides that at least one impaired class of claims or equity interests must accept a plan, excluding acceptance by any insider. Here, all creditors in Class 7, including all non-insiders, voted to accept the Plan.[2]

**L. The Plan Is Feasible (§1129(a)(11))**

36.  Section 1129(a)(11) of the Bankruptcy Code requires the Court to find that the Plan is feasible. Specifically, the Bankruptcy Court must determine that:

> [c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

37.  The Debtor's Plan is essentially a liquidating plan: the Debtor has a limited period of time to obtain a sale of the mineral claims. Although the Plan does provide that the Debtor may also satisfy creditors in the event it sells a portion of its interest in Good Earth Minerals to obtain investment funds pay off the creditors, the time limit remains the same: the Debtor must liquidate the assets or its interests in Good Earth Minerals within six months after the Effective Date if creditors are not sooner paid.

38.  In evaluating the feasibility of a liquidating plan, some courts have interpreted the language of §1129(a)(11) to mean that feasibility is not an issue to be considered. *In re 47th and Belleview Partners,* 95 B.R. 117, 120 (Bankr.W.D.Mo.1988); *In re Pero Bros. Farms, Inc.,* 90 B.R. 562, 563 (Bankr.S.D.Fla.1988). Or, to put it differently, courts find that § 1129(a)(11) is satisfied where "such liquidation ... is proposed in the plan." 11 U.S.C. § 1129(a)(11). *In re Cellular Info. Sys., Inc.,* 171 B.R. 926 (Bankr.S.D.N.Y.1994).

39.  Other courts have noted that feasibility may be an issue if the ability to conduct the liquidation is contingent upon some other uncertain event required for a sale

---

[2] Even if Burg Simpson is regarded as a Class 7 creditor, the class still accepted the Plan. Counting Burg Simpson, there would be 11 non-insider creditors. Ten (91%) holding claims totaling $223,000.00 of the $333,569.01 that would then be in Class 7 (66.86% of the claim amounts) voted in favor of the Plan.

to take place, for example, securing the consent of a third party. *In re Holmes*, 301 B.R. 911, 914 (Bankr.M.D.Ga.2003) (finding a liquidation plan not feasible where the success of the liquidation depended upon the IRS's acceptance, which had not yet occurred, of a proposed compromise of the debtor's tax obligation); *In re Yates Development, Inc.,* 258 B.R. 36, 42-44 (Bankr.M.D.Fla.2000) (holding liquidation plan was not feasible where plan could not be effectuated absent a future, favorable appellate ruling). No such uncertain required events are present here and no creditor has argued to the contrary.[3]

40. Thus, citations to cases involving the feasibility of plans providing for true reorganization are simply not persuasive authority when evaluating a plan that provides for liquidation. *In re Heritage Organization, L.L.C.*, 375 B.R. 230, 311 fn 100 (Bankr.N.D. Tex.,2007). Courts recognize that the threshold of proof necessary to satisfy the feasibility requirement is relatively low, even for reorganizing companies. *In re Sagewood Manor Associates Ltd. Partnership*, 223 B.R. 756, 762 (Bankr. D.Nev.,1998). Courts find that this relatively low threshold of proof to satisfy § 1129(a)(11) is even more easily met where the plan itself calls for liquidation rather than a reorganization that would require a reasonable assurance of commercial viability. *In re Hand*, Slip Copy, 2009 WL 1306919 (Bankr.D.Mont.,2009), citing *In re Mont-Mill Operating Company,* 16 Mont. B.R. 61, 64 (Bankr.D.Mont.1997), *quoting In re Roberts Rocky Mountain Equipment Co., Inc.,* 76 B.R. 784, 789, 4 Mont. B.R. 230, 238 (Bankr.D.Mont.1987)*; In re Clarkson,* 767 F.2d 417, 420 (8th Cir. 1985). The test for feasibility is therefore whether the property at issue can indeed be liquidated.

41. In this case, there are no barriers or uncertain future events that must occur before the Debtor is able to sell its property and no creditor has suggested otherwise.

42. Burg Simpson's contention that the property is worthless is not a valid objection to the Plan; it is only an argument about what the property will fetch at sale, not an assertion that some contingency prevents sale. Burg Simpson's complaint that the Debtor's information about the value of the gypsum is not an appraisal, but only "a report on the amount of gypsum that could be recovered," completely misses the mark. First, the Behre Dolbear appraisal that the Debtor obtained is, indeed, an appraisal. But more importantly, the critical information in valuing minerals is their quality and quantity. Once that is known, then the ascertainable market price permits accurate valuation because the quality and quantity do not change over time. Perhaps the simplest way to illustrate this point is to imagine that the asset is a pile of copper. Once one knows the quantity and the quality of the metal (less transportation cost, perhaps), the current price of copper per pound, ascertainable from the market for copper, dictates the value.

43. Burg Simpson also asserts that the Plan would somehow "delay liquidation," but offers no reasoning for its contention. Its unsupported claim flies in the face of the Plan, which contains high incentives for an efficient sale in the form of subordination as well as accruing and escalating interest. As an aside, the Debtor will also

---

[3] Any suggestion that the Debtor must have a buyer in hand at confirmation in order to confirm a liquidating plan should fall on deaf ears. If that were the case, few liquidating plans could ever be confirmed, and, indeed, no case as ever imposed this requirement.

prove that Burg Simpson's claim, made on information and belief, that the Debtor "has unsuccessfully attempted to sell these rights for years" has no basis in fact.

### M. The Plan Provides For The Payment Of All Fees Under 28 U.S.C. § 1930 (§1129(a)(12))

44. Section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees payable under 28 U.S.C. § 1930, which is provided for in Section 5.8 of the Plan.

### N. Section 1129(a)(13)

45. Section 1129(a)(13) of the Bankruptcy Code is not applicable to this case.

### CONCLUSION

46. For the reasons set forth herein, Debtors respectfully submit that the Plan fully satisfies all applicable requirements of the Bankruptcy Code and requests that this Court confirm the Plan.

DATED August 11, 2009.

**Onsager, Staelin & Guyerson, LLC**

/s/ Christian C. Onsager
Christian C. Onsager, CBN 06889
1873 S. Bellaire St., Suite 1401
Denver, Colorado 80222
Ph: (303) 512-1123
Fax: (303) 512-1129
consager@osglaw.com
Attorneys for Debtor

## Certificate of Service

I certify that on August 11, 2009, a copy of the Debtor's Memorandum was served by facsimile, by ECF service, and by email to the following:

| | | |
|---|---|---|
| Brian Matise<br>Burg Simpson Eldredge Hersh & Jardine, P.C<br>40 Inverness Dr. East<br>Englewood, CO 80112<br>Fax # (303) 708-0527 | Office of the United States Trustee<br>Attn: Alison E. Goldenberg<br>999 18th Street, Suite 1551<br>Denver, CO 80202<br>Fax # (303) 312-7259 | David V. Wadsworth<br>Sender & Wasserman, PC<br>1660 Lincoln St., 2200<br>Denver, CO 80264<br>Fax # (303) 296-7600 |

/s/Christian C. Onsager